Good morning, Your Honors. May it please the Court, Jan Norman on behalf of Mr. Larrimore, the petitioner. I think there are probably, well, there may be more than three, but I've identified sort of three basic issues in this case that may or may not concern the Court. But the first one I'm going to address is whether or not it was improper for the Court to continue reading the preliminary testimony once the witness became available. Now that is pretty much, I will admit, is a factual determination. So the standard here is whether it was an unreasonable determination of the facts by the Court of Appeal. And I would argue that it was an unreasonable determination of the facts because there had been obviously hearing where she had been determined to be unavailable. But before any of the significant evidence... She was unavailable. Yes, she had been determined to be unavailable. There had been due diligence and we are not contesting that. What happens is they start reading the preliminary testimony. They just begin and the Court calls a sidebar and says, whoops, you know, I've just been informed by the bailiff that the DA investigator has been contacted by her and she may be available. Excuse me. At this point, our position is that the Court had an obligation at a minimum to take a recess and determine exactly what the information was. The judge didn't even bother to say, you know, how soon can she be here? You know, what exactly has she said? The judge is told she has now made contact. And up to this point in the record, they had not been able to find her. It wasn't a case where they thought she was avoiding service or she didn't want to testify. They just couldn't find her. Can I get a clarification? You say this is an unreasonable determination of facts under that prong of AEDPA. What is the fact? The fact you're challenging is that the trial judge made an unreasonable determination of the fact of unavailability? That's correct, Your Honor. My position is that once the judge was informed she was available, that the judge should have stopped the proceedings at a minimum, had a recess to determine, you know, how soon she could get down to the courthouse. I mean, one of the things the court of appeals said was, well, it's reasonable because they didn't know if she'd actually show up or how long. The reason I'd like some more clarification on this point is that there seems to be no dispute that they made a good faith effort to determine unavailability. And when the trial judge made the determination initially and permitted the reading, that that was a reasonable determination of the facts. You're then saying that that reasonable determination became unreasonable because the judge, having started the reading and not having specific information, at least that's not on the record, that he had anything more than, or she, I don't know if it's woman or man, judge, that the missing witness would be available within a reasonable time. It just said sometime. This person could be maybe available sometime. So there's an antecedent question that I'm concerned about is that where's the clearly established Supreme Court law that the trial judge was required to interrupt and make a redetermination? Is it a clearly established case? It is an unreasonable application of the established law? You're taking it down to the factual determination. But what, where's the law that says that she had, the trial judge had to revisit the issue? You can answer them both together. That's the problem. All right. I would say that under Crawford, there is not, I have not found a case, and it may exist, where the Supreme Court of the United States has actually said in the middle of reading testimony, if the witness becomes available, the judge has to stop. But I think the principles under Crawford and the Supreme Court decisions after Crawford clearly establish that if the witness is available, that it is a violation of the Sixth Amendment confrontation right to lead into the record her preliminary testimony. And what I'm saying is, given that principle, that in this particular situation, since the witness became available, that the judge and defense counsel objected that the judge should have taken, under Crawford, should have taken, at least taken the effort to find out, you know, the questions that he said. I mean, if she could have been there in 10 minutes, there was another witness that the prosecution had, there wouldn't have been a delay in trial. There wasn't a finding by the trial court that, well, we're not going to, you know, we're going to continue it because we don't know that she's ever going to show up, and we don't know, you know, how long she's going to take and whether she's in New York. There were none of those findings. He just basically shut it down and said, go on with it. Let me ask you one last question after that. Isn't this whole determination also subject to harmless error review? Yes, Your Honor. So if I go with harmless error review, even if I determine that there is a violation, and I've come to that point, and I go to harmless error review, was there anything in the record that suggested that, how the testimony could have been undermined otherwise? Yes, Your Honor. I believe the standards are substantially injurious in impact. But the answer to your question, Your Honor, is you have the evidence. And I don't ever see anything in there that says that the testimony would have been recanted either. And my answer is the testimony would not have had to be recanted because. . . You would have cited the Sixth Circuit case to call that argument specious. I suspect. But also, if you look at the facts of her testimony, and you look at them carefully, what she says is, and I'm not even going to go into the argument about the inadequacy of the preliminary hearing testimony, but in the preliminary hearing testimony that she read, she said, I think this is the guy that asked for the keys. She doesn't say, you know, my client asked for the keys. There are two individuals in the apartment. Then she also, or the house, I'm sorry. She also says, later on, they asked for the keys. And she also testifies that at no time did they, two of them in the room, with her. So she's giving inconsistent testimony. At one point she says, well, there was always one in the room and then another guy was out. Then she says they asked for the keys.  My suggestion, Your Honors, is that with that kind of ambiguous testimony, based on the preliminary hearing testimony itself, that an effective cross-examination would have undermined her credibility or her certainty as to whether or not my client asked for the keys, which, as Your Honors acknowledge, that was the critical evidence on whether or not there was an attempt to rob. Are there any other questions? We're at the end. Thank you. Good morning. May it please the Court. Jonathan Klein, Deputy Attorney General for Respondent Ellie Scribner. I would like to start by briefly mentioning the procedural bar issue in this case. And Petitioner, in this case, never objected under Sixth Amendment grounds to the admission of the witness's testimony. And the California Court of Appeal ruled that as a result of that failure to object, he had forfeited that claim on appeal. The failure to object at trial is a classic example of a procedural default, barring Federal consideration of an issue. So I would submit that we do not even need to get to the merits of Petitioner's argument. How did the California Court treat the – there were two aspects. One is the unavailability determination, and then there's the one having to do with whether admitting the prior testimony itself, whether that was appropriate. Where do they invoke procedural bar on both issues? I thought they only did it with respect to the – I believe as to – let's see if I can find it really quickly. They stated that – I'm sorry, I can't find it exactly. But I'm pretty certain they said as to Petitioner's Sixth Amendment claim, we find his argument waived, or as to his constitutional claim. And so I believe that would encompass both prongs of the Confrontation Clause question, which is unavailability and an adequate prior opportunity for cross-examination. And I – as Judge Fischer, I believe, intimated in his questions, one of the initial issues, one of the preliminary determinations that need to be made in this case is whether it was an unreasonable determination of facts, as Petitioner argues, under Subdivision D-2, or whether it was an unreasonable application of law, or whether it falls under D-1. And I believe it is clear that the unavailability of a witness in the context of a Sixth Amendment analysis is a mixed question of law and fact, which this Court has stated is evaluated under Subdivision D-1, which states that a state law adjudication must be upheld unless it is contrary to or an unreasonable application of clearly established federal law. In this case, there really is no Supreme Court precedent, or I can't find any precedent whatsoever with a similar procedural scenario where the Court had held two hearings as to the availability of a witness, determined he was available, and then after the preliminary hearing testimony had already started being read to the jury, then there comes – or new information surfaces that there's a possibility that the witness may be available at some later point in time. There is no authority saying that under those circumstances, it is constitutionally required for the trial court to go back and reevaluate its unavailability determination. Let me take you back to ER 174, which is the Court of Appeals determination. Can I grab that really quickly? Yes, please. Okay. I have it. Okay. So they begin at 173, and then they're going through the whole issue of the adequate investigation and so on and so forth. And then they say in the middle of the page, defense counsel then stated, and I would object for the record. And then the reading and the direct and cross-examination was then completed. And then they go on in the next paragraph to dispose of that aspect of the claim. Then they go to another claim, the second claim. Appellant also contends that the prior testimony should not have been admitted because of the limited cross-examination. Appellant asserts this was an issue the trial court never considered, but no objection was made below on this point. In addition, appellant never raised the objection that admitting the witness's prior testimony violated his constitutional rights. People contend as waived these objections on appeal. We agree, so on and so forth. In any event, we find no merit to these contentions, not only to have the adequate opportunity to cross-examine and so on. They're talking about the prior testimony. So if there's a procedural bar, it could only go to this one. They haven't invoked it. It seems that they clearly addressed the confrontation issue in the first one. I believe I would read the opinion a little differently. On ER 172, they talk about three claims that Petitioner was making. One, she was unavailable as a witness. Two, her cross-examination was limited. And three, he was denied his constitutional right to confront the witnesses. So going to the paragraph that begins on ER 174 and going on to 175, when it states, first sentence on ER 175, in addition appellant never raised the objection that admitting the witness's prior testimony violated his constitutional rights. I don't buy that. I think in the context, you'd have to read them as talking about the prior testimony because the next paragraph starts out, in any event, we find no merit to these contentions. They've already disposed of the merits of the confrontation in the first one. And if it's not clear, isn't it our obligation then to proceed on to the merits? We can't just read an ambiguous determination. I would find it very uncomfortable to say we can take that one sentence out of the middle when it's stuck in the middle of a whole discussion relating to the prior testimony. Well, again, I would read it as that sentence is relating to the third issue, which is the whole confrontation clause claim encompassing both prongs. But, again, even if we do proceed to the merits on unavailability, for the reasons I discussed, there was no clearly established Supreme Court authority stating that under circumstances such as these, where there had already been a prior determination, two hearings, where the prior testimony had already started being read to the jury, that at that point there is a constitutional requirement for the judge to go back and revisit his earlier unavailability determination. Could you really make that argument if there were a clear showing in this case that she was available and that she was ready to testify? I believe there are really two key factors here. One is the fact that we don't know that she was available. In fact, the California Court of Appeal, in its opinion, specifically found that it was not certain she would come and testify. Take that fact and couple it with the fact that they had already started reading the preliminary hearing testimony and that posed other evidentiary problems. For example, what do you do with that testimony? Do you strike it? Can the jury consider it? How much had been read? Excuse me? How much had been read? I believe three pages of her testimony. She hadn't even got to the part that was relevant. Well, some aspects. She had identified the defendant as the person who had broken into her house by that point. She had explained that he had broken into her house and confronted her in her bedroom. So they had gotten into a lot of the meat of what she was saying. Then if I could, unless there are any other questions on that, I would briefly go to the harmless error. And even assuming that the trial court had done what Petitioner requested that it should have done, which was conduct a further inquiry into this matter, there were really only two possibilities or two possible determinations that the court could have made. One, she was still unavailable, in which case it would have been permissible for her prior testimony to come in. Or two, she was available, in which case there is no evidence in this record that her testimony would have changed, that she would have recanted, that she wouldn't have shown up. So therefore, even under the Brecht standard. I guess I just, I guess I just, I was always taught that in preliminary hearing you don't shoot your wad. You know, you don't, you don't, you don't try to cross-examine as, and everything and demolish because it's a different standard for a preliminary hearing than when you're before a jury with the ultimate trier of fact. So I guess I have a real problem in the suggestion of the appellant that there would be a whole different cross-examination and this, this, this was a critical Whitman. Well, that is, the legal tactics are different, but I believe the standard is as long as the defendant has had a prior opportunity for cross-examination, then that satisfies Confrontation Clause requirements. There's unavailability. Exactly. So. Let me ask you quickly, are you familiar with Bromley v. Wingard, the Sixth Circuit case? I guess I have to be honest here. Unfortunately, I did come across that case last night, but I would argue, and I understand that the State in that case made the exact harmless error argument that I'm making. Which they characterized as a specious argument. They did characterize it as specious, but I don't believe it is, given what I've already said, and that Petitioner would really be getting an undeserved windfall here, because, again, there were really only two possibilities as to what could have happened. Either she was unavailable still, in which case her testimony clearly would have come in, or she was available and there's no reasonable probability at all that her testimony would have differed. The difference between in person, we saw it today. We had a telephone argument and we have in person arguments. The difference between hearing prior recorded testimony, you know, transcript read, and the difference between having the witness in court face-to-face is monumental, and I think you as a trial lawyer would recognize that. So to say that you have the burden on the defendant to show somehow what would be different, demeanor would be different, we defer all the time to juries because of their opportunity to observe demeanor. The jury had no opportunity to observe demeanor. So I really, it's hard for me to say that there's no differential there. In any event, I won't say the speech is questionable. We're over time. Thank you. Any further questions? Thank you. You have some time. I was speaking to your adversary. I just want to point out to the Court the importance of exactly what the Court said and I'm going to quote this, that he'd been told by the investigator, the officer, that maybe the DA investigator said that he had been contacted by the witness and he could have her here at some point in time. Now, he's not saying she's not available. She is available, and the only question is when is she going to be there? I think that's what the record says at this point, and at that point the judge had some obligation to determine her availability. The fact that she was not available in the past at this point is irrelevant. The determination that she was unavailable meant they could not find her. They could not contact her. They could not bring her into court. At this point, they could. I mean, put it this way. What if she'd walked in the back door of the courtroom and said, here I am? Would the fact that he had found her unavailable before and started to read a couple of pages of testimony made her continue to be unavailable? And I submit no. I think at this point the Court had an obligation to determine her presence, to bring her in and have her testify. And I think that's all I have to say. Thank you. Madam, thank you. We thank counsel for their arguments. The case just argued is submitted.
judges: Schroeder, Fisher, Smith N. R.